**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION**

| | |
|---|---|
| Anderson Brothers Bank, | Civil Action No. _____ |
| Plaintiff, | |
| vs. | **COMPLAINT**<br>*(Non-Jury)* |
| Servicing Solutions, LLC, | |
| Defendant. | |

Plaintiff Anderson Brothers Bank ("ABB"), complaining of Defendant Servicing Solutions, LLC ("Servicing Solutions"), alleges and says as follows:

**PARTIES, JURISDICTION AND VENUE**

1.      ABB is a South Carolina state-chartered banking institution, organized and existing under the laws of the State of South Carolina and headquartered in Mullins, South Carolina with all of its branches located within the State of South Carolina.

2.      Upon information and belief, Servicing Solutions is a limited liability company incorporated and existing under the laws of the State of Texas and headquartered and operating in Orange, California.

3.      There is complete diversity of citizenship between ABB and Servicing Solutions, and the matter in controversy, exclusive of interest, attorneys' fees, and costs, exceeds the sum of Seventy-Five Thousand Dollars ($75,000.00). The Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.

4.      This Court has personal jurisdiction over the parties hereto.

5.      Venue is proper in this District pursuant to 28 U.S.C. § 1391, as the substantial parts of the acts, events or omissions giving rise to this action occurred in this District.

## FACTUAL BACKGROUND

6.      ABB has a large volume of consumer loans in its portfolio, which include unsecured loans granted directly by ABB to its customers ("Unsecured Loans"), loans secured by personal property that were granted directly by ABB to its customers ("Direct Secured Loans"), and loans secured by personal property that were granted by a third-party (typically an automobile dealership) and purchased by and assigned to ABB ("Indirect Secured Loans", and together with the Unsecured Loans and Direct Secured Loans, the "Consumer Loans").

7.      A significant portion of ABB's Consumer Loans are to customers who have lower credit scores or limited credit histories. These Consumer Loans require vigilant collection activity, particularly in the 11 to 59-day past due window, to avoid charge offs and repossessions than loans to customers with higher credit scores.

8.      On or about July 19, 2019, ABB and Servicing Solutions entered into a Loan Servicing Agreement (the "Agreement"), whereby Servicing Solutions, *inter alia*, represented, covenanted and agreed that it was able to, and that it shall manage, service, administer, enforce and collect on certain of ABB's Consumer Loans in exchange for payment from ABB to Servicing Solutions.[1]

9.      Further through the Agreement, Servicing Solutions agreed through a mutual confidentiality clause that all of ABB's proprietary information given to it, including, without limitation, certain of ABB's Consumer Loan customers' nonpublic personal information, shall be

---

[1] ABB and Servicing Solutions entered into that certain Amendment to Servicing Agreement on November 1, 2023, whereby the only amendment to the Agreement was for an increase to the hourly rate of Servicing Solutions' agents from $18.00 per hour to $18.50 per hour and that a higher rate would be later agreed upon if Servicing Solutions used more than 31 agents to service the Consumer Loans.

2

held in trust as confidential and not disclosed or disseminated to any third party except as necessary in the performance of Servicing Solutions' collection duties or as authorized in writing by ABB.

10.    Between 2019 and early July 2023, ABB sent Servicing Solutions large tranches of Consumer Loans on a daily basis that were between 11 and 59 days past due for Servicing Solutions to manage, service, administer, enforce and collect. For example, during the month of June 2023, ABB sent Servicing Solutions around 4,500 Consumer Loans per day, with such Consumer Loans carrying total balances of around $60 million.

11.    Between 2019 and early July 2023, ABB paid Servicing Solutions for the services it provided, and Servicing Solutions provided ABB with a litany of services, such as handling the full complement of loan servicing and collection activities including phone calls to customers, e-mails to customers, payment processing, payment plan arrangements, billing, compliance with federal regulations (*e.g.*, the TCPA and FDCPA), workflows, scripts, servicing strategies, and repossessions. ABB heavily relied on Servicing Solutions' work to service Consumer Loans that were 11 to 59 days past due. ABB did not have enough employees in its collections department to handle the servicing for all of its Consumer Loans that were 11 to 59 days past due, which is why ABB contracted with Servicing Solutions.

12.    On July 15, 2023, a third-party hacked into, and/or breached, Servicing Solutions data systems, which resulted in that third-party having access to all information ABB provided Servicing Solutions (the "Data Breach"). ABB received notice of the Data Breach on or about July 15, 2023.

13.    The Gramm-Leach-Bliley Act ("GLBA") and other federal banking statutes and regulations require financial institutions, including ABB, to have strict policies and procedures in place to prevent their consumer customers' nonpublic personal information from being

compromised or otherwise at risk of being disseminated to unauthorized third parties. ABB's auditors from the Federal Deposit Insurance Corporation ("FDIC") and South Carolina Board of Financial Institutions ("BOFI") focus on this topic in ABB's periodic audits by those federal and state governmental agencies.

14.     Accordingly, upon receiving notice of the Data Breach, ABB had no choice but to stop sending 11 to 59-day past due Consumer Loan files to Servicing Solutions on July 15, 2023 for reasonable and legitimate fear that its customers' nonpublic personal information would be accessed by a third party via the Data Breach. If ABB had continued sending its 11 to 59-day past due Consumer Loan files to Servicing Solutions on and after July 15, 2023, ABB would have significantly increased its likelihood of violating the GLBA, other federal banking regulations and likely would have caused ABB to be reprimanded by its state and federal auditors.

15.     As a result of the Data Breach, Servicing Solutions was no longer able to perform the duties and obligations it undertook to provide to ABB in the Agreement. ABB received assurances from Servicing Solutions that the time period where its data was compromised would be short, so it neither made economic sense for ABB to contract with another loan servicing company for a short time period nor was it feasible given the time it takes to onboard a new vendor that receives customers' nonpublic personal information. As a result, ABB was forced to service in-house its Consumer Loans that were 11-59 days past due.

16.     This time period, during which Servicing Solutions failed to perform under the Agreement, led to the following tidal wave of losses to ABB on its Consumer Loans: (a) because ABB's in-house collectors were overwhelmed by the volume Servicing Solutions was no longer able to handle, ABB granted large scale "deferrals"[2] to Consumer Loan borrowers that were 11-

---

[2] A loan payment deferral is where a borrower states that he cannot make a payment for that month,

59 days past due, particularly in the months of November 2023 through February 2024; (b) after the deferrals, a high percentage of the Consumer Loans' performance did not improve, which led to historically high levels of charge offs and repossessions, particularly during the months of July 2023 – June 2024. Essentially, Servicing Solutions' failure to perform its obligations and duties under the Agreement caused the loans that were 11-59 days past due during that time frame to avalanche in the subsequent months into unprecedented charge offs and repossessions for ABB.

17.     The below charts illustrate the costs of ABB's repossessions[3] between 2022 and 2024, including the spike after the July 15, 2023 Data Breach, that Servicing Solutions' failures forced ABB to endure:

 

18.     The below chart illustrates the charge offs on ABB Consumer Loans for the pre-Data Breach period of January 2022 – June 2023, compared to the post-Data Breach period of July 2023 – April 2024.

---

and the payment is deferred (not forgiven entirely).
[3] Such costs include, without limitation, the cost of repossession agents and vehicle auction companies, which show the increase in volume of repossessions.

| Consumer charge offs from Finance department monthly worksheets | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Category | January | February | March | April | May | June | July | August | September | October | November | December |
| 2022 Totals | 386,303 | 511,476 | 657,690 | 670,103 | 506,382 | 580,182 | 634,086 | 703,287 | 915,916 | 936,993 | 1,037,331 | 1,683,031 |
| 2023 totals | 711,357 | 990,285 | 1,177,511 | 1,063,569 | 1,130,842 | 1,147,029 | 1,390,554 | 1,353,063 | 1,615,395 | 1,710,619 | 1,829,561 | 2,250,209 |
| 2024 Totals | 1,477,163 | 1,433,785 | 1,983,580 | 1,707,010 | 2,171,949 | 1,408,708 | 1,274,813 | - | - | - | - | - |

19.     Comparing the $12,131,237 in charge offs during the 12-month period from July 2022 – June 2023 (the "Pre-Breach Period"), to the $20,331,596 in charge offs during the 12-month period from July 2023 – June 2024 (the "Post-Breach Period"), the charges during the Post-Breach Period exceed the charge offs during the Pre-Breach Period by **$8,200,359**. This number illustrates a significant portion of ABB's losses as a result of Servicing Solutions' failures to perform, plus ABB's excess repossession costs and collection costs between the Post-Breach Period and prior to the breach, lost interest income and attorneys' fees and costs incurred by ABB related to Servicing Solutions' failures.

20.     Around March 21, 2024, over eight months after the Data Breach, ABB resumed sending Servicing Solutions full and unredacted account information for its delinquent Consumer Loans, after becoming comfortable that doing so would not violate applicable law. Since that time, ABB has resumed sending certain of its delinquent Consumer Loans to Servicing Solutions; however, the damages ABB incurred as a result of Servicing Solutions' failures remain.

**FOR A FIRST CAUSE OF ACTION**
*(Breach of Contract)*

21.     The allegations of the above paragraphs are realleged herein as if set forth verbatim.

22.     Through the Agreement, a valid contract existed between ABB and Servicing Solutions whereby Servicing Solutions represented, covenanted and agreed that it was able to, and that it shall manage, service, administer, enforce and collect on certain of ABB's Consumer Loans in exchange for payment from ABB and to hold in trust and as confidential all of ABB's proprietary information given to Servicing Solutions, including, without limitation, certain of its Consumer Loan customers' nonpublic personal information.

6

23.     ABB performed under the Agreement by providing certain of its Consumer Loans to Servicing Solutions for servicing and collection, until applicable law prevented ABB from doing so in the period following the Data Breach, and paying Servicing Solutions for all approved work performed.

24.     Servicing Solutions breached the Agreement by being unable to manage, service, administer, enforce and collect on ABB's Consumer Loans in the months following the Data Breach, and allowing a third-party to access ABB's proprietary information, including certain of its Consumer Loan customers' nonpublic personal information.

25.     ABB sustained damages as a result of the breach in at least the amount of $8,200,359 in excess charge offs during the Post-Breach Period when compared to the Pre-Breach Period, plus ABB's excess repossession costs and collection costs between the Post-Breach Period and prior to the breach, lost interest income and attorneys' fees and costs incurred by ABB related to Servicing Solutions' failures in an exact amount to be proven at trial.

### FOR A SECOND CAUSE OF ACTION
*(Promissory Estoppel)*

26.     The allegations of the above paragraphs are realleged herein as if set forth verbatim.

27.     In the alternative, if the Court finds for any reason that no contract existed between ABB and Servicing Solutions and equity is necessary to prevent the injustices stated herein, Servicing Solutions made a promise, unambiguous in its terms, to be able to, and that it shall manage, service, administer, enforce and collect on certain of ABB's Consumer Loans in exchange for payment from ABB, and to hold in trust and as confidential all of ABB's proprietary information given to Servicing Solutions, including, without limitation, certain of its Consumer Loan customers' nonpublic personal information.

28.     ABB actually, substantially and reasonably relied on this promise to its detriment by (a) not hiring additional in-house collectors to collect on Consumer Loans that ABB was sending to Servicing Solutions; (b) not retaining a separate loan servicing company to collect on its Consumer Loans; and (c) sending Servicing Solutions certain of its Consumer Loans, particularly the tranche that was 11-59 days past due.

29.     Based on the nature of the specific, unambiguous promises made by Servicing Solutions to ABB, it was expected and foreseeable by Servicing Solutions that ABB would rely on Servicing Solutions' promises to ABB. The course of dealing and course of performance between Servicing Solutions and ABB prior to the Data Breach made it even more clear to Servicing Solutions that ABB was relying on Servicing Solutions' promises.

30.     ABB was injured by relying on Servicing Solutions' failed promises of it being able to, and that it shall manage, service, administer, enforce and collect on ABB's Consumer Loans in the months following the Data Breach without violating applicable law, in at least the amount of $8,200,359 in excess charge offs during the Post-Breach Period when compared to the Pre-Breach Period, plus ABB's excess repossession costs and collection costs between the Post-Breach Period and prior to the breach, lost interest income and attorneys' fees and costs incurred by ABB related to Servicing Solutions' failures in an exact amount to be proven at trial.

## FOR A THIRD CAUSE OF ACTION
### *(Breach of Fiduciary Duty)*

31.     The allegations of the above paragraphs are realleged herein as if set forth verbatim.

32.     A fiduciary relationship existed between ABB and Servicing Solutions because ABB entrusted Servicing Solutions with its proprietary information, including certain of its Consumer Loan customers' nonpublic personal information.

33.    Servicing Solutions breached its fiduciary duty to ABB by allowing ABB's proprietary information, including certain of its Consumer Loan customers' nonpublic personal information, to be accessed by third-parties.

34.    ABB was injured as a result of Servicing Solutions' breach of its fiduciary duty by being unable to send Consumer Loans to Servicing Solutions without violating applicable law, resulting in damages in at least the amount of $8,200,359 in excess charge offs during the Post-Breach Period when compared to the Pre-Breach Period, plus ABB's excess repossession costs and collection costs between the Post-Breach Period and prior to the breach, lost interest income and attorneys' fees and costs incurred by ABB related to Servicing Solutions' failures in an exact amount to be proven at trial.

## FOR A FOURTH CAUSE OF ACTION
### (Negligence)

35.    The allegations of the above paragraphs are realleged herein as if set forth verbatim.

36.    Servicing Solutions owed ABB a duty of care to be able to, and to actually manage, service, administer, enforce and collect on certain of ABB's Consumer Loans in exchange for payment from ABB and to hold in trust and as confidential all of ABB's proprietary information given to Servicing Solutions, including, without limitation, certain of its Consumer Loan customers' nonpublic personal information.

37.    Servicing Solutions breached that duty of care by its negligent acts or omissions of allowing the Data Breach to occur and rendering itself unable to perform its duties to ABB, which resulted in Servicing Solutions being unable to manage, service, administer, enforce and collect on certain of ABB's Consumer Loans and failing to hold in trust and as confidential all of ABB's proprietary information given to Servicing Solutions, including, without limitation, certain of its Consumer Loan customers' nonpublic personal information.

38.    As a direct and proximate result and consequence of the negligence of Servicing Solutions, ABB has suffered damages within the State of South Carolina, including, without limitation, the amount of $8,200,359 in excess charge offs during the Post-Breach Period when compared to the Pre-Breach Period, plus ABB's excess repossession costs and collection costs between the Post-Breach Period and prior to the breach, lost interest income and attorneys' fees and costs incurred by ABB related to Servicing Solutions' failures in an exact amount to be proven at trial.

**PRAYER FOR RELIEF**

WHEREFORE, ABB respectfully requests entry of judgment in its favor and against Servicing Solutions providing the following relief:

(a)    For judgment on ABB's breach of contract claim in at least the amount of $8,200,359 in excess charge offs during the Post-Breach Period when compared to the Pre-Breach Period, plus ABB's excess repossession costs and collection costs between the Post-Breach Period and prior to the breach, lost interest income and attorneys' fees and costs incurred by ABB related to Servicing Solutions' failures in an exact amount to be proven at trial;

(b)    In the alternative, for judgment on ABB's promissory estoppel claim in at least the amount of $8,200,359 in excess charge offs during the Post-Breach Period when compared to the Pre-Breach Period, plus ABB's excess repossession costs and collection costs between the Post-Breach Period and prior to the breach, lost interest income and attorneys' fees and costs incurred by ABB related to Servicing Solutions' failures in an exact amount to be proven at trial;

(c)    For judgment on ABB's breach of fiduciary duty claim in at least the amount of $8,200,359 in excess charge offs during the Post-Breach Period when compared to the

Pre-Breach Period, plus ABB's excess repossession costs and collection costs between the Post-Breach Period and prior to the breach, lost interest income and attorneys' fees and costs incurred by ABB related to Servicing Solutions' failures in an exact amount to be proven at trial;

(d)     For judgment on ABB's negligence claim in at least the amount of $8,200,359 in excess charge offs during the Post-Breach Period when compared to the Pre-Breach Period, plus ABB's excess repossession costs and collection costs between the Post-Breach Period and prior to the breach, lost interest income and attorneys' fees and costs incurred by ABB related to Servicing Solutions' failures in an exact amount to be proven at trial; and

(e)     For an award to ABB for such other and further relief as the Court may deem just and proper.

*s/ Kyle A. Brannon*
Kyle A. Brannon (Fed. Bar No. 11509)
**MAYNARD NEXSEN PC**
1230 Main Street, Suite 700 (29201)
P.O. Drawer 2426
Columbia, South Carolina, 29202
Telephone: (803) 540-2168
Fax: (803) 727-1447
Email: kbrannon@maynardnexsen.com

*Attorney for Plaintiff, Anderson Brothers Bank*

July 2, 2026
Columbia, South Carolina

11